AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>IN THE MATTER OF THE SEARCH OF AN APPLE I-PHONE 5<br>WHICH WAS FOUND IN THE POSSESSION OF ANTONY<br>ALBERT HERNANDEZ, SEIZED BY LAW ENFORCEMENT ON<br>MARCH 14, 2023, AND CURRENTLY LOCATED AT THE<br>FRANKLIN COUNTY SHERIFF'S OFFICE IN COLUMBUS,<br>OHIO | )<br>)<br>)<br>)<br>)<br>)   Case No.  2:23-mj-229 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, which is fully incorporated herein.

located in the _____ Southern _____ District of _____ Ohio _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is fully incorporated herein

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 846, 841(a)(1) | Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances |

The application is based on these facts:

See the Attached Affidavit of HSI SA Powers, which is fully incorporated herein.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Clark Powers, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: April 4, 2023

City and state: Columbus, Ohio

_____
Kimberly A. Jolson
United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

IN THE MATTER OF THE SEARCH OF
AN APPLE I-PHONE 5 WHICH WAS
FOUND IN THE POSSESSION OF
ANTONY ALBERT HERNANDEZ,
SEIZED BY LAW ENFORCEMENT ON
MARCH 14, 2023, AND CURRENTLY
LOCATED AT THE FRANKLIN COUNTY
SHERRIFF'S OFFICE IN COLUMBUS,
OHIO

Case No. 2:23-mj-229

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Homeland Security Investigations (HSI) Special Agent (SA) Clark S. Powers (your affiant), being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—one cellular telephone—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

1.      Your affiant has been employed by HSI since December 2016, having initially been assigned to our Sells, Arizona (AZ) office. During that time, your affiant was assigned to the Sells Border Enforcement and Security Task Force (BEST), which focused on human, narcotics, bulk cash, and weapon smuggling occurring between Ports of Entry (POE) and the Phoenix, AZ metropolitan area. Beginning in October 2020, your affiant was assigned to the HSI Columbus, Ohio office, as a participating member of the Central Ohio High Intensity Drug Trafficking Area (HIDTA) multi-agency task force. Your affiant gained experience through a Bachelor of the Arts

Degree in Criminal Justice in 2007, completion of the Criminal Investigator Training Program (CITP) and completion of the HSI Special Agent Training Academy in 2017. During CITP and HSI Academy training, your affiant was instructed in all phases of criminal investigation such as: Criminal Law, Search and Seizure, Field Enforcement Techniques, Firearms Proficiency, and Interviewing and Evidence. Prior to becoming a Special Agent, your affiant served as a United States Border Patrol Agent in Ajo, AZ from September 2008 to December 2016. Your affiant is responsible for enforcing federal criminal statutes including, but not limited to, controlled substance violations, pursuant to 21 U.S.C. §§ 841 and 846. I have participated in narcotics, bulk cash smuggling, alien smuggling, firearms, child exploitation, and hostage investigations. These investigations have included interviewing defendants and witnesses, conducting surveillance, controlling informants, and preparing and serving search warrants, as well as serving arrest warrants. I am familiar with narcotics traffickers' methods of operation including the importation, distribution, and transportation of illegal drugs, the collection of money, and money laundering. I am also familiar with various counter-surveillance methods utilized by narcotics traffickers.

2.      While employed as a Special Agent, your affiant has conducted and participated in numerous investigations of criminal activity, including bulk cash smuggling, human smuggling, firearms and bulk ammunition smuggling, law enforcement officer assault investigations, and controlled substance investigations. These investigations have included interviewing defendants and witnesses, conducting surveillance, controlling informants, preparing, and serving search warrants, as well as executing arrest warrants, and seizing evidence associated with criminal activity. Your affiant is familiar with narcotics traffickers' methods of operation including the importation, storage, distribution, and transportation of illegal drugs, the collection of money, and the laundering of illicit proceeds derived from criminal activity.

3. The information set forth in this affidavit is based upon my knowledge, training, experience, and participation in investigations involving the smuggling, possession, distribution, and storage of narcotics and illicit proceeds derived from the sale of narcotics. This information is also based on the knowledge, training, experience, and investigations conducted by fellow law enforcement officers, who have reported to me either directly or indirectly. Your affiant believes this information to be true and reliable. I know it is a violation of 21 U.S.C. § 846 for any person to knowingly possess and/or conspire to possess with the intent to distribute a controlled substance.

4. The information set forth in this affidavit is based upon my personal participation in this investigation, as well as information obtained from other HSI Special Agents, task force officers, and sheriff's deputies assisting in this investigation.

5. Through my training and experience, I know drug trafficking organizations commonly use electronic devices, cellular telephones, and radio telephones in attempts to maintain secure communications between network members and customers. They use these devices during the commission of their criminal activity and the events preceding and following such activity for the following reasons:

    a) They use cellular telephones to arrange, coordinate, and monitor smuggling activities including communicating with other smugglers, arrangers, and other transporters/drivers to coordinate narcotics loads. They also use cellular telephones to communicate with these same individuals during counter surveillance activities, and to warn co-conspirators of the presence of law enforcement or other obstacles to their smuggling plans.

    b) They use cellular telephones to contact financial institutions where they launder their proceeds or receive monies for payment for their role in the scheme, as well

as to contact individuals who sell/rent real estate, vehicles, or other facilities the smuggler uses in the course of their illegal activities.

c) They use all the communication technologies available within the particular cellular telephone, including voice messaging, texting, audio communications, direct dial, push-to-talk, email, internet access, communication applications, encrypted communications, photo and video images, and contact lists containing information about their criminal associates to accomplish their illicit activities.

d) They use multiple cellular telephones and often change cellular telephones to avoid detection by law enforcement.

6.     Based on the facts set forth in this affidavit, there is probable cause to believe that a violation of 21 U.S.C. §§ 846 and 841(a)(1) (conspiracy to distribute and possess with intent to distribute methamphetamine) has been committed by Antony **HERNANDEZ**. There is also probable cause to believe that evidence relating to the above criminal violation under investigation, including the user of the cellular telephone and information about both known and unknown co-conspirators, will be stored on, or tied to the cellular telephone. There is probable cause to believe that the use of the investigative technique described by the warrant will result in officers learning this information.

**IDENTIFICATION OF THE DEVICES TO BE EXAMINED**

7.     The property to be searched includes:

a) An Apple I-phone 5, which was found in the possession of Antony **HERNANDEZ**, seized by law enforcement on March 14, 2023, which is currently located at the Franklin County Sherriff's office in Columbus, Ohio. (Hereinafter referred to as "**Phone 1**").

4

8.      The applied-for warrant would authorize the forensic examination of **Phone 1** for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

9.      The United States, including HSI and the Franklin County Sheriff's Office (FCSO), are conducting a criminal investigation of Antony Albert HERNANDEZ (hereafter referred to as HERNANDEZ), Lance Tacory MAYFIELD, Estevan ESQUIBEL Lara, and Richard ELIZONDO Jr., who are suspected of conspiring to possess with intent to distribute more than 5 kilograms of methamphetamine, in violation of 21 U.S.C. § 846.

10.      To date, this investigation has shown that ELIZONDO, ESQUIBEL, and MAYFIELD are based out of California and Texas, and have coordinated the transportation and delivery of narcotics and money from California to Ohio via commercial aircraft.

11.      On December 22, 2022, HSI Task Force Officer (TFO) Ryan Gibbons was contacted by the Transportation Security Administration (TSA) in reference to an undeclared Glock 9mm pistol that was located during TSA bag screening. The bag containing the firearm was checked-in with American Airlines flight AA3894, from Cleveland, OH (CLE) to O'Hare International, Chicago, IL (ORD), by ESQUIBEL under the name Estevan Ladislado Lara-ESQUIBEL, DOB xx/xx/1992. ORD was ESQUIBEL's connecting flight to his final destination of Los Angeles, CA (LAX), via flight AA1502.

12.      After TSA located the undeclared firearm, they escorted the bag back to the American Airlines ticket counter and requested that American Airlines have ESQUIBEL return to the ticket counter. ESQUIBEL had already boarded the flight to ORD. The boarding process for AA3894 concluded and the door to the jet bridge was closed. An American Airlines gate agent removed ESQUIBEL from flight AA3894 and asked him to return to the American Airlines ticket

5

counter. ESQUIBEL did not return to the ticket counter and abandoned the bag by leaving the airport. It was later discovered, via a review of Cleveland Hopkins security camera footage, that ESQUIBEL exited Cleveland Hopkins Airport and was picked up by an unknown person near the now-closed Sheraton hotel.

13.     TSA's administrative search of ESQUIBEL's dark green roller bag revealed a Glock 45 9mm pistol, 457 rounds of Winchester 9mm ammunition, and two Glock magazines in vacuum sealed plastic.

14.     It was discovered that ESQUIBEL had a second checked bag, a "black Lucas roller bag," that was not removed from the plane prior to its departure. That second bag was returned to CLE due to ESQUIBEL not being aboard the flight. TFO Cline took custody of the black Lucas roller bag, belonging to ESQUIBEL, from the American Airlines baggage office at approximately 5:00 pm on December 22, 2022.

15.     A canine sniff was conducted on the black Lucas roller bag by Cleveland Police Officer Andrejcak and his canine partner Finnegan, who has been a narcotics detection canine since 2017. Finnegan is trained and certified by the Ohio Peace Officer's Training Commission (OPOTA) to alert to heroin, cocaine, methamphetamine, and marijuana. Officer Andrejcak advised TFO Cline that Finnegan alerted to the presence of an illegal narcotic odor on the black Lucas roller bag.

16.     A search warrant for ESQUIBEL's black Lucas roller bag was sought and received in the Cuyahoga County Common Pleas Court. Cuyahoga County Judge Nancy Russo signed the search warrant. The search warrant for ESQUIBEL's black Lucas roller bag was executed by TFO Cline and TFO Gibbons on December 27, 2022.

17.     A warrant search of ESQUIBEL's black Lucas roller bag revealed 136 grams (bag weight) of Fentanyl in vacuum sealed plastic, a Colt 1911 38 Super pistol vacuum sealed in plastic, one Colt 38 Super magazine, and 247 rounds of Winchester 38 Super ammunition.

18.     Further investigation showed that ESQUIBEL was travelling with ELIZANDO. Additional review of Cleveland Hopkins security camera footage revealed ESQUIBEL and ELIZONDO arrived at the airport together. Upon entering the airport, they walked to the American Airlines ticket counter, but spoke to separate agents. The camera footage showed that ELIZONDO checked a nearly identical bag to ESQUIBEL's black Lucas roller bag and also transported a medium sized roller bag through the north TSA checkpoint. ESQUIBEL appeared to have paid for ELIZONDO's checked bag.

19.     Research conducted on ELIZONDO by investigators revealed that on September 19, 2022, HSI Minneapolis, MN seized $45,000.00, which was believed to be proceeds from drug trafficking, from ELIZONDO at the Minneapolis Airport.

20.     Investigators further learned, on October 27, 2022, the Drug Enforcement Administration (DEA) Dallas, TX seized $12,000.00, which was believed to be proceeds from drug trafficking, from ESQUIBEL.

21.     On January 14, 2023, ELIZONDO arrived in Columbus, OH (CMH) from LAX with a checked bag. On January 16, 2023, HSI Cleveland interdicted ELIZONDO as he was about to depart. He was carrying approximately $10,000 cash and only transporting a backpack. To avoid alerting ELIZONDO of any on-going investigation, he was allowed to board his flight to LAX with the claimed cash.

22.     On December 27, 2022, investigators subpoenaed toll records for telephone number 626-510-0241, which was the telephone number that ESQUIBEL provided to American Airlines

for his December 22, 2022, flight. A review of the toll records from around the date of the Fentanyl seizure on December 22, 2022, provided investigators with multiple numbers of interest. Two of the numbers of interest were 614-475-4450 (Tri Link Storage Facility in Columbus, OH) and 682-559-1686.

23.     On January 6, 2023, investigators subpoenaed AT&T regarding 682-559-1686. The subscriber information listed for 682-559-1686 was listed as Lance MAYFIELD of 729 Rawlins Dr., Apt 309, Lancaster, TX. It stated MAYFIELD had been a customer since 08/19/2021. There was an email address (Newnewlove@rocketmail.com) linked to the account for MAYFIELD. The account was still showing as active and current.

24.     On January 17, 2023, HSI SA Curtis Brabender, assigned to the Columbus, OH field office, served a subpoena on TriLink Storage located at 2470 Sunbury Rd. Columbus, OH. This subpoena requested all information regarding rental units tied to ESQUIBEL and/or ELIZONDO.

25.     On February 8, 2023, HSI SA Brabender met with the manager of TriLink Storage located at 2470 Sunbury Rd., Columbus, OH to retrieve all files related to the previously submitted subpoena. TriLink provided all files they had related to Unit #244 located at their Sunbury Rd. location. According to the records provided by TriLink Storage, Unit #244 was rented by Estevan ESQUIBEL with listed mailing address of 4848 Walnut Rd., Phillan, CA 92371. ESQUIBEL provided phone number 626-510-0241 and an email address of estevan.esquibel@icloud.com. ESQUIBEL had rented a 5x5x8 unit for $80.63 per month. The agreement was signed on 11/22/2022. The gate access code assigned for this unit is 5623924.

26.     The identification document provided was a photograph taken of a California Identification Card: E1106849. This ID card is for our subject, Estevan Ladislado ESQUIBEL

Lara. The address listed on the ID is 25590 Prospect Ave., 24C, Loma Linda, CA 92354. This address is different than that which was listed on the rental agreement for Unit #244. This ID was issued on 09/03/2021.

27.     TriLink provided a list of access dates and times for their storage facility. Every unit has a unique access code, so the list provided only showed the access granted for gate code 5623924, which matched the number listed on the above-mentioned contract. The following is a breakdown of dates the code was used to access the storage facility secure area:

| Date | Number of Times Used to Access Facility |
|---|---|
| November 22, 2022 | 3 |
| November 23, 2022 | 2 |
| November 28, 2022 | 3 |
| November 30, 2022 | 2 |
| December 1, 2022 | 2 |
| December 2, 2022 | 4 |
| December 3, 2022 | 1 |
| December 4, 2022 | 5 |
| December 5, 2022 | 1 |
| December 6, 2022 | 2 |
| December 7, 2022 | 3 |
| December 8, 2022 | 3 |
| December 9, 2022 | 3 |

9

| December 10, 2022 | 1 |
|---|---|
| December 15, 2022 | 1 |
| December 16, 2022 | 1 |
| December 21, 2022 | 1 |
| December 22, 2022 | 3 |
| December 29, 2022 | 2 |
| December 30, 2022 | 2 |
| January 1, 2023 | 2 |
| January 10, 2023 | 1 |
| February 2, 2023 | 3 |
| February 3, 2023 | 1 |

28. SA Brabender was able to review surveillance camera footage from the February 2nd and 3rd dates, which depicted the security camera view fixed upon the facility's secured entry gate, where the access keypad is also located. The same four door silver Chevrolet Malibu sedan bearing Ohio registration: JID2649 was observed at the TriLink Storage entry gate each of the four times the code was entered to gain access. This vehicle is registered to PV Holding Corp with a listed address of 3801 International GTWY Columbus, OH. This is one of the rental car facilities located at the Columbus International Airport. SA Brabender was able to observe what appeared to be a black male driver, wearing a black coat, enter the code into the gate.

29. On February 8, 2023, investigators subpoenaed Avis Budget Group regarding rental information pertaining to the Chevy Malibu bearing Ohio registration JID2649.

30.     On February 9, 2023, HSI TFO Gibbons received information from a subpoena that showed Lance MAYFIELD with a listed address of 729 Rawlins Dr., Lancaster, TX 75146 as the customer who rented the Chevy from February 1, 2023, through February 3, 2023. The listed phone number on the reservation was 682-559-1686. The driver's license number listed on the reservation was 47803568, which matches MAYFIELD's TX driver's license.

31.     On February 9, 2023, SA Brabender met with the on-site manager of AVIS rental cars located at 4106 International Gateway, Columbus, OH 43219. This is the rental car facility located at the Columbus International Airport. The manager was able to pull up surveillance video tied to the February 1, 2023, renting of the Chevy Malibu, JID2649. A black male, wearing a black winter coat, backpack, and carrying a Nike shoe box can be seen approaching the counter. The individual appears to be the same build as MAYFIELD's driver's license describes him. Additionally, the coat he is wearing at the rental car facility appears to match the coat worn by the driver of the Malibu when accessing the storage facility on February 2nd and 3rd. SA Brabender believes, given the registration for the vehicle was listed under MAYFIELD's name, it is likely indeed MAYFIELD who rented the vehicle. No other persons are observed walking in or out of the rental terminal with MAYFIELD.

32.     On March 14, 2023, at approximately 1:58 pm, Officer Troy Gibson with the Delaware County Sheriff's Office utilized his narcotics detection canine to conduct an open-air sniff of Unit #244 at the TriLink Storage facility, located at 2470 Sunbury Rd., Columbus, OH. Officer Gibson's canine alerted to the presence of a narcotics odor he is trained to detect emanating from inside unit #244.

33.     On March 14, 2023, at approximately 4:15 pm, investigators learned that MAYFIELD and another individual identified as Antony HERNANDEZ were arriving at John

11

Glenn International Airport via Spirit Airlines flight NK888 from Los Angeles. Investigators previously identified HERNANDEZ as a commonly called individual from February 2023 telephone tolls from MAYFIELD's phone number, 682-559-1686.

34. On March 14, 2023, at approximately 4:15 pm, investigators conducted surveillance as HERNANDEZ and MAYFIELD exited the aircraft and proceeded to the baggage claim area of the airport. MAYFIELD immediately departed the airport, taking an airport shuttle to the rental car parking deck, located just under one mile from the main airport terminal. HERNANDEZ remained in the airport until he could retrieve a checked-in bag from baggage claim. HERNANDEZ was observed to be talking on his cellular phone as he retrieved a dark gray, hard shell, roller suitcase. As HERNANDEZ departed the airport at approximately 5:20 pm, he was approached by investigators. HERNANDEZ gave consent for investigators to search his checked-in bag. Investigators observed that the zipper for the roller bag's main compartment was super glued shut. Concealed within the lining of HERNANDEZ's bag was approximately 15 pounds of a crystal substance which tested presumptive positive for methamphetamines.

35. In a post Miranda interview, HERNANDEZ admitted to transporting a suitcase, which he initially stated he believed to contain marijuana, from Los Angeles, CA to Columbus, OH. HERNANDEZ identified his facilitator for the smuggling attempt as a skinny, African American male, known to HERNANDEZ as "Trappo". HERNANDEZ provided consent to search the iPhone 5 found on his person, and identified a contact saved as "OH" with listed phone number 682-559-1686. Investigators previously determined that this phone number is subscribed to by MAYFIELD.

36. HERNANDEZ stated that MAYFIELD was utilizing a storage unit in Columbus, Ohio to store narcotics. HERNANDEZ explained that he was last in Ohio with MAYFIELD

12

approximately one month prior to his March 14, 2023, encounter with investigators, in order to transport a similar amount of methamphetamine. HERNANDEZ indicated that MAYFIELD eventually showed HERNANDEZ the storage unit used to store narcotics. HERNANDEZ described the storage unit as being located next to a school and near a large green field. The TriLink Storage location, where Unit #244 is located, is bordered on the north by Mifflin Middle School and bordered on the east by North East Park, which matches the description provided by HERNANDEZ. Investigators showed an ariel photograph of TriLink Storage, located at 2470 Sunbury Rd. Columbus, OH, to HERNANDEZ. HERNANDEZ positively identified the exact area of unit #244 as being the storage locker that MAYFIELD was using to store narcotics.

37.     HERNANDEZ stated he had transported marijuana previously via commercial flights approximately 15 times. Once he was introduced to Trappo, aka MAYFIELD, HERNANDEZ agreed to transport methamphetamine, telling MAYFIELD "If it pays better, I'm down". HERNANDEZ stated he was to be paid approximately $7,000 upon successful completion of the transportation attempt.

38.     During the course of the custodial interview, HERNANDEZ stated that he utilized **Phone 1** to text and call MAYFIELD. HERNANDEZ stated he was on the phone with MAYFIELD when investigators approached him in the airport. HERNANDEZ gave investigators permission to review text messages between HERNANDEZ and MAYFIELD that were on **Phone 1**.

39.     As a result of the positive K-9 alert on TriLink Storage Unit #244 on March 14, 2023, and the information obtained from the custodial interview of HERNANDEZ, investigators applied for, and were granted a Franklin County Municipal Court Search Warrant for TriLink Self Storage Unit #244, located at 2470 Sunbury Rd., Columbus, OH 43219. Franklin County

13

Municipal Court Judge Jarrod B. Skinner issued the search warrant at approximately 8:50 pm. At approximately 9:50 pm, investigators entered Unit #244. Inside Unit #244, investigators located a vacuum sealer, wrapping and packaging materials similar to those found in HERNANDEZ's roller bag. Also found inside Unit #244 were 3 digital scales, several hard-shell roller bags which had been cut open, a United States Parcel Service parcel return service receipt addressed to Lance MAYFIELD at 729 Rawlins Dr., Lancaster, TX, and an AT&T packing slip addressed to Lance MAYFIELD at 729 Rawlins Dr., Lancaster, TX. The AT&T packing slip listed mobile phone number 682-559-1686.

40.     **Phone 1** that is the subject of this affidavit is currently in the custody of the Franklin County Sheriff's Office (FCSO) located in Columbus, Ohio, which is within the Southern District of Ohio. In my training and experience, I know that **Phone 1** has been stored in a manner in which the contents are, to the extent material to this investigation, in substantially the same state as they were when **Phone 1** first came into possession of law enforcement.

41.     I submit that there is probable cause to believe that **Phone 1**, which has been requested to be searched, may contain evidence identifying: (1) cellular telephone numbers used by drug-trafficking associates; (2) telephone calls conducted with drug-trafficking co-conspirators (to include time, date, and duration of calls); (3) photographs of and/or with drug-trafficking co-conspirators, illegal controlled substances, and/or currency; (4) text and/or voicemail message communications (including time and date) with drug-trafficking associates; (5) electronic mail and social media internet sites accessed by the users of the devices; and (6) usernames and/or passwords utilized by the users of the devices to access electronic mail and social media internet sites.

42.     Based on my training and experience, as well as the training and experience of other law enforcement officers participating in this investigation, I know that drug trafficking organizations utilize cellular telephones (such as **Phone 1**) to communicate when conducting their illegal activity, utilizing the voice, text, and electronic mail (if accessible) functions of the cellular telephone to do so. These devices are utilized in furtherance of the crime by coordinating the transport and distribution of controlled substances, the collection and movement of currency, as well as communicating with members of the drug trafficking organization about the specific operations of that organization.

43.     Further, based on my training and experience, as well as the training and experience of other law enforcement officers participating in this investigation, I know that individual members of DTOs often carry and utilize more than one cell phone per person at a time. It is common practice for these individuals to use different phones to communicate with different members of the drug organization. This helps insulate individuals from being linked to the greater conspiracy if one member is caught by law enforcement. Additionally, when communicating with DTOs based in Mexico, it is common to see phones or sim cards that are solely used to communicate with the individuals in Mexico, and phones or sim cards solely used to communicate with individuals in the United States.

## TECHNICAL TERMS

44.     Based on my training and experience, I use the following technical terms to convey the following meanings:

  a.  Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of

transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system (GPS) technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such

navigation. The GPS consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

45.     Based on my training, experience, and research, I know that these devices have capabilities that allow them to serve as a wireless telephone, digital camera, and GPS navigation device. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

46.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

47.     *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how **Phone 1** was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on **Phone 1** because:

17

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a device is evidence may depend on other information stored on the device and the application of knowledge about how a device behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

18

48. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of **Phone 1** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

49. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

50. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of **Phone 1** described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

Clark S. Powers
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me
on April 4, 2023:

Kimberly A. Jolson
United States Magistrate Judge

## <u>ATTACHMENT A</u>

The property to be searched includes the following:

a)   An Apple I-phone 5, which was found in the possession of Antony

**HERNANDEZ**, seized by law enforcement on March 14, 2023, which is

currently located at the Franklin County Sherriff's office in Columbus, Ohio.

(Hereinafter referred to as "**Phone 1**").

This warrant authorizes the forensic examination of **Phone 1** for the purpose of

identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.    All records on the devices described in Attachment A that relate to violations of 21 U.S.C. §§ 846 and 841(a)(1) and involve Antony HERNANDEZ including:

    a.  Any contact made either by call, text message, email, or third party application between any of the seized devices or other parties currently unknown to law enforcement at this time.  Third party applications may include (but are not limited to):

        i.  KIK Messaging App

        ii.  BlackBerry Messenger (BBM)

        iii.  What's APP

        iv.  Signal

        v.  Tango

        vi.  Facebook Messenger

        vii.  Group Me

        viii.  Voxer Messenger

        ix.  Yahoo Messenger

        x.  Google Maps and other Mapping applications

    b.  Types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    c.  Any information related to sources or distributions of drugs (including names, addresses, phone numbers, pictures, or any other identifying information);

    d.  Any information recording Antony HERNANDEZ's schedule or travel;

e.  All bank records, checks, credit card bills, account information, and other financial records that may reveal evidence of drug and/or money laundering; and

f.  Evidence of user attribution showing who used or owned each device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

2.  As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.